IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT KNOXVILLE

OCTOBER 1998 SESSION

FILED

January 6, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | * | C.C.A. NO. 03C01-9710-CC-00447 |
| APPELLEE, | * | BLOUNT COUNTY |
| VS. | * | Hon. D. Kelly Thomas, Jr., Judge |
| TYRIS HARVEY, | * | (Robbery) |
| APPELLANT. | * | |

For Appellant:

Mack Garner
Office of the Public Defender
Fifth Judicial Circuit
421 High Street
Maryville, TN 37804

Gerald L. Gulley, Jr.
Contract Appellate Defender
P.O. Box 1708
Knoxville, TN 37901-1708

For Appellee:

John Knox Walkup
Attorney General and Reporter
450 James Robertson Parkway
Nashville, TN 37243-0493

Elizabeth B. Marney
Assistant Attorney General
425 Fifth Avenue North
Nashville, TN 37243-0493

Kirk Andrews and Lisa McKenzie
Assistant District Attorneys General
363 Court Street
Maryville, TN 37804

OPINION FILED: _____

AFFIRMED

GARY R. WADE, PRESIDING JUDGE

## OPINION

The defendant, Tyris Harvey, was charged with one count of robbery, one count of theft, and five counts of delivery of cocaine of various amounts. After pleading guilty to all charges except the robbery, he was convicted of that offense in a jury trial. The trial court imposed a three year sentence for robbery. The trial court also imposed an eleven month, twenty-nine day sentence for theft of property, four years at Range I for three Class C felony cocaine convictions, and eight years at Range I for two Class B felony cocaine convictions. The sentences for the Class B felony cocaine convictions were consecutive to the sentences for the Class C felony cocaine convictions and the robbery and theft sentences were to be consecutive to the Class B felony sentences. The effective sentence is, therefore, fifteen years. The defendant was fined fourteen thousand five-hundred dollars.

In this appeal of right, the defendant presents the following issues for review:

(I) whether the evidence was sufficient to sustain the jury's conviction for robbery;

(II) whether the trial court erred by imposing consecutive sentences; and

(III) whether the trial court erred by failing to sentence the defendant to a community corrections program.

We affirm the judgment of the trial court.

In July 1996, the defendant, Tyris Harvey, while at the residence of Betty Jean Allen, robbed the victim, Ed Blair, of his billfold. Blair, who was there to purchase a vacuum cleaner from Ms. Allen, had paid Ms. Allen and was returning his billfold to his pocket when the defendant struggled to take the billfold. Ms. Allen testified that the struggle ensued for two to three minutes.

2

The victim, who was seventy-eight when the robbery occurred, testified that the defendant grabbed his billfold from behind. Sometime after the struggle, the victim noticed his left arm was bleeding. The victim could not remember how his arm was injured and did not seek medical attention.

Billy Radford testified that the victim had stopped his vehicle to ask if he had seen someone running down the road. Radford described the victim as having labored breathing; he recalled the victim saying he had emphysema. Radford, who also noticed blood on the victim's arm, pointed out to the victim where he had seen someone running along the roadway.

Larry Stevens testified that he saw the defendant run across several yards. He also saw the victim drive to a stop sign and then slump over his steering wheel. When Stevens approached the car, he noticed that the victim's arm was bleeding profusely. The victim stated that he had just been robbed and that he thought he was having a heart attack.

I

The defendant first complains that there was insufficient evidence to sustain a conviction for robbery. He contends that no robbery was committed because violence was not part of the crime. Moreover, he contends that no robbery was committed because the victim was not in fear.

On appeal, the state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which might be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). The credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are

matters entrusted to the jury as triers of fact. Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978). When the sufficiency of the evidence is challenged, the relevant question is whether, after reviewing the evidence in the light most favorable to the state, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983); Tenn. R. App. P. 13(e).

Robbery is defined as "the intentional or knowing theft of property from the person of another by violence or putting the person in fear." Tenn. Code Ann. § 39-13-401. While the term "violence" is not defined in our criminal code, this court has previously approved the definition set forth in Funk and Wagnall's Standard Desk Dictionary (1977): "physical force unlawfully exercised." See State v. Black, 745 S.W.2d 302, 304 (Tenn. Crim. App. 1987); see also Black's Law Dictionary 1570 (6th ed. 1990) (defining "violence" in part as the "[u]njust or unwarranted exercise of force").

In State v. Alonzo Tony Watson, the defendant snatched money and a check back from a cashier. No. 01C01-9606-CC-00260, slip op. at 7 (Tenn. Crim. App., at Nashville, Jan. 14, 1998). This court, applying the definition of violence set out in the preceding paragraph, held that the defendant's actions constituted robbery, because he used physical force to take the money. Id., slip op. at 7.

In State v. Tony Fitz, the defendant pushed the victim backwards into a wall and then grabbed money out of a cash register. No. 02C01-9712-CC-00486, slip op. at 5 (Tenn. Crim. App., at Jackson, October 19, 1998). Using the established definition of violence, this court ruled that there was the requisite "violence" because the defendant's actions permitted him to grab money out of the

4

open cash register.  Id., slip op. at 5.

Ms. Allen, the eye-witness to the crime, testified that the defendant and the victim struggled over the control of the billfold.  Although the victim could not remember how he injured his arm, there is sufficient circumstantial evidence that the injury occurred during the struggle.  Thus, the theft involved violence ("physical force unlawfully exercised") and, in our view, a rational trier of fact could have found the essential elements of the crime of robbery beyond a reasonable doubt.  See Jackson v. Virginia, 443 U.S. 307 (1979).

Because the robbery statute is written in the disjunctive, requiring the state to prove that the theft was accomplished either by violence *or* by putting the person in fear, the evidence is sufficient to establish the robbery.

II

The defendant's second complaint is that the trial court erred by imposing consecutive sentences.  The defendant argues the trial court committed error by considering improper criminal history of the defendant, by considering the defendant to be a "dangerous offender," by considering the defendant to have committed the offense while on probation, and by considering the defendant satisfied any other criteria set forth in Tenn. Code Ann. § 40-35-115(b).  We disagree.

When there is a challenge to the length, range, or manner of service of a sentence, it is the duty of this court to conduct a de novo review with a presumption that the determinations made by the trial court are correct.  Tenn. Code Ann. § 40-35-401(d).  This presumption is "conditioned upon the affirmative showing

5

in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991);  see State v. Jones, 883 S.W.2d 597 (Tenn. 1994).  The Sentencing Commission Comments provide that the burden is on the defendant to show the impropriety of the sentence.

Our review requires an analysis of (1) the evidence, if any, received at the trial and sentencing hearing;  (2) the presentence report;  (3) the principles of sentencing and the arguments of counsel relative to sentencing alternatives;  (4) the nature and characteristics of the offense;  (5) any mitigating or enhancing factors; (6) any statements made by the defendant in his own behalf;  and (7) the defendant's potential for rehabilitation or treatment.  Tenn. Code Ann. §§ 40-35-102, -103, and -210; State v. Smith, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987).

In calculating the sentence for Class B, C, D, or E felony convictions at the time of these offenses, the presumptive sentence is the minimum within the range if there are no enhancement or mitigating factors.  Tenn. Code Ann. § 40-35-210(c). If there are enhancement factors but no mitigating factors, the trial court may set the sentence above the minimum.  Tenn. Code Ann. § 40-35-210(d).  A sentence involving both enhancement and mitigating factors requires an assignment of relative weight for the enhancement factors as a means of increasing the sentence. Tenn. Code Ann. § 40-35-210.  The sentence may then be reduced within the range by any weight assigned to the mitigating factors present.  Id.

Prior to the enactment of the Criminal Sentencing Reform Act of 1989, the limited classifications for the imposition of consecutive sentences were set out in Gray v. State, 538 S.W.2d 391, 393 (Tenn. 1976).  In that case, our supreme court

ruled that aggravating circumstances must be present before placement in any one of the classifications. Later, in State v. Taylor, 739 S.W.2d 227 (Tenn. 1987), the court established an additional category for those defendants convicted of two or more statutory offenses involving sexual abuse of minors. There were, however, additional words of caution:

> [C]onsecutive sentences should not be routinely imposed ... and ... the aggregate maximum of consecutive terms must be reasonably related to the severity of the offenses involved.

Taylor, 739 S.W.2d at 230. The Sentencing Commission Comments adopted the cautionary language. Tenn. Code Ann. § 40-35-115. The 1989 Act is, in essence, the codification of the holdings in Gray and Taylor; consecutive sentences may be imposed in the discretion of the trial court only upon a determination that one or more of the following criteria[1] exist:

> (1) The defendant is a professional criminal who has knowingly devoted himself to criminal acts as a major source of livelihood;
>
> (2) The defendant is an offender whose record of criminal activity is extensive;
>
> (3) The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;
>
> (4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;
>
> (5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim

---

[1]The first four criteria are found in Gray. A fifth category in Gray, based on a specific number of prior felony convictions, may enhance the sentence range but is no longer a listed criterion. See Tenn. Code Ann. § 40-35-115, Sentencing Commission Comments.

or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;

(6) The defendant is sentenced for an offense committed while on probation;  or

(7) The defendant is sentenced for criminal contempt.

Tenn. Code Ann. § 40-35-115(b).

In Gray, our supreme court had ruled that before consecutive sentencing could be imposed upon the dangerous offender, as now defined by subsection (b)(4) in the statute, other conditions must be present:  (a) that the crimes involved aggravating circumstances;  (b) that consecutive sentences are a necessary means to protect the public from the defendant;  and (c) that the term reasonably relates to the severity of the offenses.

In State v. Wilkerson, 905 S.W.2d 933 (Tenn. 1995), our high court reaffirmed those principles and ruled that consecutive sentences cannot be required for any of the classifications "unless the terms reasonably relate to the severity of the offenses committed and are necessary in order to protect the public from further serious criminal conduct by the defendant."  Id. at 938.   The Wilkerson decision, which modified guidelines adopted in State v. Woods, 814 S.W.2d 378, 380 (Tenn. Crim. App. 1991), governing the sentencing of dangerous offenders, described sentencing as "a human process that neither can nor should be reduced to a set of fixed and mechanical rules."  Wilkerson, 905 S.W.2d at 938 (footnote omitted).

The trial court imposed consecutive sentences on the basis that the defendant had a record of extensive criminal activity.  In imposing consecutive sentences, the trial judge stated as follows:

8

I have considered all of the things that cases say you're supposed to consider in determining the sentence and the manner of service ... Mr. Tyris's statement, the presentence report, the testimony at trial, the sentencing principles and the code, likelihood or potential for rehabilitation ... and nothing of that suggests anything other than that the sentence should [not] be served out in the community. His criminal history starts back before age eighteen and continues, without ceasing, to now. He's been on ... violated parole and probation. The likelihood of rehabilitation is poor because of that. He's continued to break the law after being in prison for a long time, which is something I can't understand, but that's what he's done. Because I would think prison would be a pretty horrible experience.

These are serious offenses that would be greatly depreciated without confinement. What we're talking about here is five different incidents of delivering cocaine. His offenses involved ... he has a history of offenses that involve potential of personal injury to people.

The defendant argues that the trial court improperly considered the criminal history of the defendant in imposing consecutive sentences. While conceding that it is unclear from the record, the defendant contends that the trial judge improperly relied on the various charges in this case to which the defendant plead guilty, including the five convictions for delivery of cocaine, in determining that the defendant had a record of extensive criminal activity. The defendant argues that none of the cocaine offenses can be counted because, by the words of the statute, the defendant must have been convicted of the prior felonies before he committed the crime for which he is being sentenced.

In State v. Blouvett, 904 S.W.2d 111 (Tenn. 1995), our supreme court ruled that the legislature intended for a "prior conviction" to be a "conviction that has already been adjudicated before the commission of the offense at issue." Id. at 113. Thus, none of the five cocaine offenses could be considered. Yet, the record is unclear whether the trial judge considered the other convictions in this case.

9

In questions on sentencing issues, the judgment of the trial judge, who saw and heard the defendant firsthand and properly considered the statutory principles, is entitled to the presumption of correctness. Ashby, 823 S.W.2d at 169. The trial court found that the defendant had a criminal history that started before he reached the age of eighteen and has continued until now. This included a first degree criminal sexual conduct conviction in 1986 in Michigan for which the defendant was sentenced to ten years incarceration. In 1992, the defendant was released on parole. Soon after his release, the defendant was placed back in prison because he violated his parole. In November 1995, the defendant was released after serving his ten year sentence. In August 1996, the defendant was arrested for the robbery of the victim. While released on bail on the robbery charge, the defendant was convicted of domestic assault and shoplifting. Even without the consideration of the five cocaine offenses and the theft, this record, in our view, is a sufficient basis for the determination that the defendant has an extensive record of criminal activity.

When a defendant falls within the statutory classifications for eligibility to be considered for consecutive sentencing, the only remaining considerations are whether (1) the sentences are necessary in order to protect the public from further misconduct by the defendant and (2) "the terms are reasonably related to the severity of the offenses." Wilkerson, 905 S.W.2d at 938.

We hold that trial court had a basis for concluding that consecutive sentences are necessary to protect the public. The defendant has shown little promise of rehabilitation, as these crimes were committed only about a year after he was released from prison. "Further misconduct" by the defendant appears to be likely, unless he is incarcerated. Due to his criminal record and his failure to

10

demonstrate any rehabilitative qualities, we must also conclude that the effective sentence is reasonably related to the severity of the offenses.

The defendant also argues that the trial court erred by considering the defendant to be a "dangerous offender" in imposing consecutive sentences. The trial court, however, made no finding that the defendant was a "dangerous offender." Instead, the trial court stated that the offenses for which the defendant was being sentenced involved the potential of personal injury to others in the specific context of denying the defendant sentencing under the Community Corrections Act. Thus, this claim is without merit.

The defendant also argues the trial court erred in the imposition of consecutive sentencing by considering the offense to have been committed while on probation. There is nothing in the record to support this contention. As the transcript of the sentencing hearing clearly shows, the trial court merely noted the extent of the defendant's criminal history and his violations of parole and probation as reasons for denying community corrections as an alternative sentence. Thus, this contention is without merit.

The defendant argues the trial court erred by considering any other criteria set forth in Tenn. Code Ann. § 40-35-115(b) in imposing consecutive sentences. In our view, the trial court found the defendant had an extensive record of criminal activity. Because there is nothing in the record to suggest the trial judge considered any other criteria of Tenn. Code Ann. § 40-35-115(b), this issue is without merit.

11

III

The defendant's third complaint is that the trial court erred by failing to sentence the defendant to a community corrections program. While the defendant concedes that he would not be eligible for placement in a Community Corrections program due to his robbery conviction, which under Tenn. Code Ann. § 40-36-106(a)(2) is a "crime against the person as provided in title 39, chapter 13, parts 1-5," he contends that he is eligible for consideration under Tenn. Code Ann. § 40-36-106(c) providing consideration for persons with histories of drug or substance abuse and for whom community placement and treatment would be a benefit.

The purpose of the Community Corrections Act of 1985 was to provide an alternative means of punishment for "selected, nonviolent felony offenders in front-end community based alternatives to incarceration." Tenn. Code Ann. § 40-36-103(1). The Community Corrections sentence provides a desired degree of flexibility that may be both beneficial to the defendant yet serve legitimate societal aims. State v. Griffith, 787 S.W.2d 340, 342 (Tenn. 1990). That the defendant meets the minimum requirements of the Community Corrections Act of 1985, however, does not mean that he is entitled to be sentenced under the act as a matter of law or right. State v. Taylor, 744 S.W.2d 919 (Tenn. Crim. App. 1987).

> The following offenders are eligible for Community Corrections:
>
> (1) Persons who, without this option, would be incarcerated in a correctional institution;
>
> (2) Persons who are convicted of property-related, or drug/alcohol-related felony offenses or other felony offenses not involving crimes against the person as provided in title 39, chapter 2 [repealed], parts 1-3 and 5-7 or title 39, chapter 13, parts 1-5;
>
> (3) Persons who are convicted of non-violent felony offenses;

12

(4) Persons who are convicted of felony offenses in which the use or possession of a weapon was not involved;

(5) Persons who do not demonstrate a present or past pattern of behavior indicating violence;

(6) Persons who do not demonstrate a pattern of committing violent offenses; and

(7) Persons who are sentenced to incarceration or on escape at the time of consideration will not be eligible.

Tenn. Code Ann. § 40-36-106(a).

The defendant is not eligible for Community Corrections because Tenn. Code Ann. § 40-36-106(2) precludes those convicted of crimes against a person under title 39, chapter 13, parts 1-5 from participating in the program. Robbery is a crime against a person. State v. Rhonda Lorraine Hanke, No. 03101-9707-CC-00254, slip op. at 3 (Tenn. Crim. App., at Knoxville, Aug. 20), perm to app. filed (October 19, 1998). Under the special needs provision of the Act, some individuals who commit crimes against the person may be placed on Community Corrections if they have special needs arising from alcohol or drug abuse for which treatment is available. Tenn. Code Ann. § 40-36-106(c).

The 1989 Act does provide that the record of the sentencing hearing "shall include specific findings of fact upon which application of the sentencing principles was based." Tenn. Code Ann. § 40-35-209(c). And, while we acknowledge that de novo appellate review does not relieve the trial judge from compliance with the provisions of Tenn. Code Ann. § 40-35-209(c), we are nonetheless able to conclude that the record is adequate to support the denial of an alternative sentence.

In denying a Community Corrections sentence, the trial judge stated:

13

> I have considered all of the things that cases say you're supposed to consider in determining the sentence and the manner of service ... Mr. Tyris's statement, the presentence report, the testimony at trial, the sentencing principles and the code, likelihood or potential for rehabilitation ... and nothing of that suggests anything other than that the sentence should [not] be served out in the community.

The 1989 Act necessarily embodies the exercise of discretion at the trial court level.  See State v. Fletcher, 805 S.W.2d 785 (Tenn. Crim. App.1991). Sentencing requires an individualized, case-by-case approach.  State v. Moss, 727 S.W.2d 229, 235 (Tenn. 1986).  Confinement is often necessary to protect society from a defendant with a lengthy history of criminal conduct and when alternative sentences have been unsuccessful.  Tenn. Code Ann. § 40-35-103(1)(A)-(C).  In Ashby, the supreme court held that it was "not the policy ... to place trial judges in a judicial straight-jacket...."  823 S.W.2d at 171.  The presumptive correctness standard of appellate review has a sound basis.  In matters of sentencing, so long as the statutory guidelines have been met, our supreme court has expressed a general reluctance "to interfere with [trial courts'] traditional discretionary powers." Id.

The defendant testified at the sentencing hearing that he desired help with his drug and alcohol abuse problems.  It is our view, however, that the record fully supports the trial court's finding that the defendant had an extensive criminal history and that past efforts to rehabilitate him by applying measures less restrictive than confinement had been unsuccessful.  The presumptive standard prevails here on whether confinement, rather than sentencing under the Community Corrections Act, is the better alternative.

Accordingly, the judgment of the trial court is affirmed.

14

_____
Gary R. Wade, Presiding Judge

CONCUR:


_____
David H. Welles, Judge


_____
Thomas T. Woodall, Judge

15